IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CLAYTON A. KEEFER, # R-03516, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-00147-MJR |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, S.A. GODINEZ, | ) |
| WEXFORD MEDICAL, DR. ELYEA, | ) |
| DR. GIEBY, AND DR. CALDWELL | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Vandalia Correctional Center ("Vandalia"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff now sues the Illinois Department of Corrections ("IDOC"); IDOC Director, Salvador Godinez; Wexford Medical ("Wexford") (the organization that contracts to provide medical services to Illinois inmates); and Wexford's Chief Medical Administrator, Dr. Elyea; Dr. Gieby (an Illinois River Correctional Center physician); and Dr. Caldwell (a Vandalia physician). Plaintiff claims that Defendants have denied him adequate medical treatment for an open wound on his right ankle. (Doc. 1). Plaintiff seeks treatment for his condition and monetary damages. (Doc. 1, p. 8).

Plaintiff filed this action on November 20, 2013 in the Northern District of Illinois. On February 10, 2014, the case was transferred from the Northern District of Illinois to this Court pursuant to 28 U.S.C. § 1404(a). (Doc. 7). The complaint comes now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C.

§ 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

**The Complaint**

Prior to his arrest and incarceration, in late September 2012, Plaintiff was diagnosed with necrotizing facitis in his left foot. (Doc. 1, p. 4).  He underwent two surgeries and a skin graft on his foot while being hospitalized for nearly two months. (*Id*.) According to the complaint, the skin graft covering his right ankle failed and left a seven by four inch area of exposed flesh. (*Id*.)  Plaintiff continued to be treated by the surgeon who had performed the skin graft until Plaintiff was arrested in January 2013 and taken into custody at Peoria County jail. (*Id*.) While in custody, Plaintiff was sent out to see a specialist at the Methodist wound clinic in Peoria, who ordered hyperbaric oxygen treatment and a specific protocol for dressing changes and medication.  Plaintiff received daily treatments at the wound clinic up until the time he was transferred to Stateville Reception Center on March 14, 2013, following his sentencing. (*Id*., p. 5).  On Plaintiff's last visit to the Methodist wound clinic, the specialist outlined a continuing care treatment plan, which directed that Plaintiff should continue receiving the hyperbaric oxygen treatment.  A copy of the orders from the specialist was placed in Plaintiff's IDOC medical file.[1] (*Id*.)

Upon entering Stateville, Plaintiff was seen by a general healthcare practitioner who reviewed the orders, but said that none of the orders could be followed until Plaintiff was transferred to a permanent institution.  (*Id*.)  Plaintiff does not name this particular healthcare provider.  The provider ordered a "simple dressing change" instead. (*Id*.)

---

[1] Plaintiff also states that a copy of the orders was attached to his complaint, but the Court finds no such documentation.

In late April 2013, Plaintiff was transferred to Vandalia Correctional Center and seen by Dr. Caldwell. (*Id*., p. 6). Plaintiff claims that Dr. Caldwell said that it would be tough to get approval for the treatments and medications recommended by the wound clinic specialist, due to cost considerations, and ordered "nothing more than a daily dressing change." (*Id*.) It is unclear from the complaint whether Dr. Caldwell ever attempted to seek approval for the recommended course of treatment.

In late May 2013, Plaintiff was transferred again, this time to Illinois River Correctional Center, and seen by Dr. Gieby. (*Id*.) According to the complaint, Dr. Gieby agreed that Plaintiff needed to be treated at an outside wound clinic, but told Plaintiff that it was unlikely such treatment would be approved, due to its cost. (*Id*.) Again, it is unclear from the complaint whether Dr. Gieby ever sought approval for the recommended course of treatment. However, the complaint does recount that Dr. Gieby had a medical hold placed on Plaintiff because she "believed that if she couldn't get the Dept. of Corrections to approve the continued care and send [Plaintiff] back to the wound clinic or follow the orders sent" then she could at least follow Plaintiff's progress herself. (*Id*.)

Plaintiff claims that since being taken under the custody of IDOC his wound has begun to open back up in places where it had previously healed (*id*.) and he has suffered multiple infections and pain in his foot and ankle (*id*.). Finally, Plaintiff asserts that the injury was initially so severe that the director of the Peoria County Jail requested that the prosecutor's office release Plaintiff on a medical furlough to avoid the risk of amputation due to infection. (*Id*., p. 7).

**Analysis**

After carefully considering the allegations, the Court finds that the complaint sets forth two actionable claims: Count 1 states a claim for damages against only Defendants Gieby

and Caldwell under the Eighth Amendment for deliberate indifference to a serious medical need; Count 2 states a claim for injunctive relief against Defendant S.A. Godinez, in his official capacity as Director of IDOC. Defendants Elyea, Wexford Medical, and IDOC are dismissed for the following reasons.

### Count 1: Claim for Damages

To establish an Eighth Amendment medical needs claim, Plaintiff must show that: (1) the medical condition was objectively serious; and (2) the state officials acted with deliberate indifference to his medical needs. *See Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). The complaint satisfies the objective prong of this test. The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The complaint alleges that Plaintiff needs hyperbaric oxygen treatments to ensure that the wound on his foot heals properly. (Doc. 1, p. 5). According to the complaint, Plaintiff entered IDOC with a large, open wound that resulted from a failed skin graft. Plaintiff had been under the care of a physician until he was taken into custody at the Peoria County Jail, and even then he was sent out to see a specialist in order to receive appropriate medical care. The complaint implies that without proper treatment, Plaintiff's wound could deteriorate to the point that amputation would become necessary. These allegations meet the threshold requirement for a "serious" medical need.

The complaint also satisfies the subjective component of an Eighth Amendment medical needs claim against Defendants Gieby and Caldwell. To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a '"sufficiently culpable

state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). With respect to Defendants Gieby and Caldwell, the complaint asserts that both individuals knew of the previously prescribed treatment plan for Plaintiff's wound, but declined to follow the medical orders because they believed that the treatment would not be approved due to cost considerations. These allegations are sufficient to state an Eighth Amendment medical needs claim against both Gieby and Caldwell at this early stage in this litigation.[2]

Plaintiff also lists S.A. Godinez (Director of the Illinois Department of Corrections) and Dr. Elyea (Wexford Medical's Chief Medical Administrator), but makes no specific allegations against either of them in the body of the complaint. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). And in the case of those

---

[2] Although the actions related to Plaintiff's claim against Dr. Gieby arose at the Illinois River Correctional Center, which is outside of this Court's jurisdiction, the joinder of Defendant Gieby with Defendant Caldwell under Count 1 appears to be proper at this time under Rule 20(a)(2) which provides that persons may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2). If this proves not to be true, the Court may sever the case at a later date. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

defendants in supervisory positions, the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff has not alleged that any of the above Defendants is "personally responsible for the deprivation of a constitutional right," *id.*, and a Defendant cannot be liable merely because he supervised a person who caused a constitutional violation. Accordingly, Defendants S.A. Godinez and Dr. Elyea, in their individual capacities, will be dismissed from this action without prejudice.

Likewise, Plaintiff names Wexford Medical as a Defendant in the caption, but makes no allegation that any individual defendant acted or failed to act as a result of an official policy espoused by Wexford. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Therefore, at this time, Wexford will be dismissed without prejudice.

Lastly, Plaintiff cannot maintain his suit for damages against the Defendant IDOC, because it is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). As such, IDOC will be dismissed with prejudice.

**Count 2: Injunctive Relief**

Plaintiff also seeks an injunction ordering IDOC to have him seen by a specialist and to follow any medical orders prescribed by the specialist. Typically, in a claim for injunctive relief, the government official who is responsible for carrying out the requested relief would be named as a defendant in his or her official capacity. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). In the context of prison litigation, the official is usually the warden of the institution where the inmate is incarcerated. In this case, Plaintiff named the Director of IDOC, S.A. Godinez, rather than the warden of any particular institution. Because Plaintiff was transferred to various correctional facilities throughout his first year of incarceration, the Court will allow the claim for injunctive relief against S.A. Godinez, in his official capacity as Director of IDOC, to remain.

In summary, Plaintiff shall be allowed to proceed with his Eighth Amendment medical needs claim (Count 1) against Defendants Gieby and Caldwell. He shall also be allowed to proceed with his request for injunctive relief (Count 2) against Defendant Godinez, in his official capacity as Director of IDOC. Defendants Wexford Medical and Dr. Elyea are dismissed without prejudice. Defendant IDOC is dismissed with prejudice.

**Pending Motion**

Plaintiff's motion for appointment of counsel (Doc. 5) shall be referred to United States Magistrate Judge for further consideration.

**Disposition**

**IT IS HEREBY ORDERED** that Defendant **WEXFORD MEDICAL** and **DR. ELYEA** are **DISMISSED** without prejudice from this action.

**IT IS FURTHER ORDERED** that Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** with prejudice.

Defendant **GODINEZ** will remain as a defendant in this action, but only in his official capacity for purposes of Plaintiff's request for injunctive relief.  Plaintiff's claim for damages against Defendants **GIEBY** and **CALDWELL** shall proceed.

The Clerk of Court shall prepare for Defendants **GIEBY, CALDWELL,** and **GODINEZ** :  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk

or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for appointment of counsel (Doc. 5).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: March 5, 2014**

s/ MICHAEL J. REAGAN<br>
United States District Judge